UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABBAS CORPORATION (PVT) Limited,<br>   Plaintiff, and<br><br>HOME INTERIORS CORP.,<br>   Intervenor/Plaintiff<br><br>   v.<br><br>MICHAEL AZIZ ORIENTAL RUGS, INC.,<br>   Defendant. | CIVIL ACTION<br>NO. 14-mc-91053-TSH |

**MEMORANDUM OF DECISION AND ORDER**
**April 19, 2016**

**HILLMAN, D.J.**

**Background**

   This action involves a dispute between Home Interiors Corp. ("Home Interiors") and Abbas Corporation (PVT) Limited ("Abbas") regarding who should have priority to the assets of Defendant, Michael Aziz Oriental Rugs, Inc. ("Aziz, Inc."). Abbas originally filed suit in this Court seeking to register a judgment in the amount of $438,517.92 that it had obtained against Aziz, Inc. in the United States District Court for the Southern District of New York. Home Interiors, which the Court permitted to intervene, claims priority over Abbas as a result of a security interest in Aziz Inc.'s assets which it purchased from Valley National Bank in June of 2012. Among the assets against which Abbas and Home Interiors seek to execute is a debt owed to Aziz, Inc. by Arthur T. Gregorian, Inc. ("Gregorian") a rug retailer located in Newtown Lower

Falls, Massachusetts. This Order addresses *Abbas Corporation (PVT) Limited's Motion For Summary Judgment* (Docket No. 38) and *Intervenor-Defendant Home Interiors' Memorandum Of Law In Opposition To Plaintiff's Motion For Summary Judgment And In Support Of Its Cross-Motion For Summary Judgment* (Docket No. 43). For the reasons stated below, Abbas's motion for summary judgment is *allowed* and Home Interiors' cross-motion for summary judgment is *denied*.[1]

### Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case,

---

[1] On March 7, 2014, this Court issued a Summons To Trustee to Gregorian (Docket No. 7). Gregorian answered on May 16, 2014, stating that it is in possession of rugs originally purchased from Aziz, Inc. which are valued at approximately $90,000. *See* Docket No. 17. Essentially, the parties' cross-motions for summary judgment seek a determination as to who shall have the right to the rugs and any additional monies recoverable under the "Gregorian Receivable", as hereafter defined.

the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences." *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."'" *Id.* (citation to quoted case omitted). "Cross-motions for summary judgment require the district court to 'consider each motion separately, drawing all inferences in favor of each non-moving party in turn.' " *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014)(citation to quoted case omitted).

**Facts**

On October 17, 2011, Abbas obtained a judgment in the amount of $438,517.92 against Aziz, Inc. in the United States District Court for the Southern District of New York. *See Abbas Corporation (PVT) Ltd. v. Michael Aziz Oriental Rugs, Inc.*, 820 F.Supp.2d 549 (S.D.N.Y. 2011). On October 28, 2011, Aziz, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York. On November 14, 2013, Aziz, Inc. caused its bankruptcy case to be voluntarily dismissed without discharge or distribution to creditors.

In November 2011, early in Aziz Inc.'s bankruptcy, its principal, Michael Aziz ("Michael"), transferred $94,000 to his sons, characterizing the transfers on his bank statement as a "gift to sons." In June 2012, Aziz Inc.'s principal secured lender, VNB New York Corp.

("Valley National Bank"), was paid the sum of $366,782.43 in full satisfaction of its loan to Aziz, Inc. The Valley National Bank loan had been personally guaranteed by Michael and his spouse Soraya Aziz, and additionally secured by a mortgage on their residence.

Instead of simply paying off the loan in Aziz Inc.'s own name, the transaction was structured as an "assignment" of the "loan documents" from Valley National Bank in favor of an entity called "Home Interiors Corp." The assignment was memorialized in an agreement titled "*Assignment of Loan Documents*," dated June 25, 2012. Home Interiors is wholly owned by Michael's son Joshua Aziz ("Joshua"), who was and is its sole officer and employee. Joshua admits that he formed Home Interiors and purchased the Valley National Bank loan to help his father. Home Interiors was formed in mid-May 2012, shortly before the assignment took place.

Joshua was an employee of Aziz, Inc. until at least May 2012. Home Interiors had no business operations at the time of the assignment. Home Interiors remained inchoate and continued to conduct no business for a year and a half, from June 2012, when it obtained the assignment of lien, until at least November 2013, when Aziz Inc.'s bankruptcy case was dismissed. Home Interiors has no management "team" or employees, other than Joshua. Joshua uses his Brooklyn, New York apartment as Home Interiors' address. Home Interiors has no separate telephone line of its own and Joshua's personal home computer functions as his only computer for both personal and business use.

The source of all of the funds used by Home Interiors to purchase the assignment was Michael. Specifically, according to Home Interiors, $270,000 of the monies, including $255,000 from Michael's individual retirement account, came directly from Michael. An additional $94,000 came from the $94,000 transferred in the aggregate by Michael to his sons in November 2011 as "gift to sons." Home Interiors has produced a series of agreements depicting a

4

circuitous transaction, by which Michael purportedly provided the funds as a "loan" to his son, Joshua, who in turn purported to "loan" the money to Home Interiors, which then used the money to pay Valley National Bank. In his initial communication with Valley National Bank, Joshua, via email dated May 18, 2012, volunteered to over-pay the note amount by an additional $112,951.85, if the bank would return monies to his father that it had previously applied toward the loan balance (an offer that was rejected by the bank); the funds which Joshua sought returned were funds that Valley National Bank had previously seized from Michael's personal savings account. Aziz, Inc. was insolvent at the time that Home Interiors used Michael Aziz's monies to purchase the assignment of the Valley National Bank loan, such that it had insufficient assets to fund a plan of reorganization. At the time that Home Interiors used Michael's monies to purchase the assignment of the Valley National Bank loan in June 2012, Aziz Inc.'s operating reports showed the company as having a negative net worth of ($1,580,456).

Home Interiors did not record the assignment of the lien against Aziz, Inc.'s assets until March 26, 2014. Home Interiors is in possession and custody of Aziz, Inc.'s remaining inventory of carpets as part of the "surrender" of assets to Home Interiors immediately upon dismissal of the Aziz Inc.'s bankruptcy in November 2013, and is selling them off, supposedly to repay the "loan" from Michael. According to Joshua, the inventory is located at the same storage facility in Long Island City, New York at which Aziz Inc. had stored the bulk of its inventory, and merely moved to a different floor of the facility.

Home Interiors used the same attorneys as Aziz, Inc. to set up the corporation and consummate the assignment, and uses the same accountant as Aziz, Inc. Gregorian is a Massachusetts corporation that Aziz Inc.'s records indicate owed $136,000 to it as of September 2013 for the purchase of goods (the "Gregorian Recievable"). Home Interiors' counsel copied its

correspondence asserting a lien on the Gregorian Receivable, not to Joshua, but instead to Michael, the principal of Aziz, Inc.  Home Interiors has never conducted any business other than that directly related to the assignment of the Valley National Bank lien and associated storage and ongoing liquidation of Aziz Inc.'s remaining assets.

## Discussion

By its motion, Abbas seeks a dismissal of Home Interiors' claim to the assets of Aziz, Inc. In support, Abbas asserts that Home Interiors is a family-owned alter ego of Aziz, Inc. which was set up for the benefit of Aziz, Inc. and its principal, Michael, as a "straw instrumentality" in order to prevent Abbas from enforcing its judgment.  More specifically, Abbas argues that because Aziz Inc.'s debt was purchased by its alter-ego, Home Interiors, the lien assigned to Home Interiors by Valley National Bank was extinguished by operation of law.  Home Interiors argues that it purchased Aziz Inc.'s debt and obtained a first priority secured position in an arm's length transaction.  Home Interiors also points out that had it not purchased the debt from Valley National Bank, Abbas would be in the same position it is now because its unsecured judgment would be subordinated to Valley National Bank's superior interest.  The parties agree that New York law applies to this dispute.

Under New York law, "courts will pierce the corporate veil 'whenever necessary to prevent fraud or achieve equity.'". *JSC Foreign Econ. Ass'n Technostroyexpert v. Int'l Develop. And Trade Servs., Inc.*, 295 F.Supp.2d 366, 377 (S.D.N.Y. 2003)(citation to quoted case omitted). However, "[n]o definitive rule governs when courts will pierce the corporate veil, because the decision 'in a given instance will necessarily depend on the attendant facts and equities.'" *Id.* (citation to quoted case omitted).  In general, however, a party seeking to pierce the corporate veil must establish that: " '(1) the owners exercised complete domination of the

corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury.' " *Id.*, at 377-78 (citation to quoted case omitted). "In other words, the plaintiff must establish that that the third party 'abused the privilege of doing business in the corporate form'" *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F.Supp.3d 388, 402 (S.D.N.Y. 2015)(citation to quoted case omitted).  Among the factors to be considered by the courts in assessing such a claim are the following:

> (1)  the existence or lack thereof of corporate formalities, such as the issuance of stock, election of directors, and keeping corporate records; (2) whether the corporation was adequately capitalized, (3) whether corporate funds are utilized for personal or business purposes; (4) the existence of overlapping officers, directors and employees; (5) whether there exist common or unique addresses, telephone numbers and the like between entities, (6) 'the amount of business discretion exercised by the alleged dominant entity,' (7) whether the corporations in question deal with each other at arm's length, '(8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.'

*JSC Foreign Econ. Ass'n,* 295 F. Supp. 2d at 378 (citation to quoted case omitted).

In this case, there are sufficient facts which are not in dispute to support a finding that Home Interiors is the alter ego of  Michael/Aziz, Inc. in that: (1) Home Interiors was formed shortly before the transaction with Valley National Bank took place, *i.e.*, the purchase of the Aziz, Inc. loan and assignment of Valley National Bank's security interest to Home Interiors; (2) Home Interiors did not conduct any business after purchasing the debt in June 2012 until November 2013 when it began liquidating Aziz Inc.'s assets; (3) the only business which Home Interiors has engaged is the liquidation of Aziz Inc.'s assets; (4) the address and telephone number for Home Interiors are Joshua's personal address/number, Home Interiors' business records are kept on Joshua's personal computer, and Joshua is the only employee of Home Interiors, *i.e.*, Home

Interiors is not operating as a corporate entity; (5) Joshua contributed little or no money to the company; Michael contributed substantially all of the funds, including the funds used to purchase the Aziz, Inc. debt from Valley National Bank[2]; and (6) Home Interiors' attorneys copied correspondence asserting a lien on the Gregorian Receivable to Michael, but *not* Joshua. However, the fact that Home Interiors acts as an alter ego of Michael is not sufficient, in and of itself, for Abbas to prevail on its claim. *See Tap Holdings, LLC v. Orix Fin. Corp.*, 109 A.D.3d (2013)(piercing of corporate veil is not a cause of action independent of that against the corporation, it is established when facts and circumstances compel court to impose corporate obligation on its owners who are otherwise shielded from liability).  Abbas must establish that Michael/Aziz Inc., through Home Interiors perpetrated an injustice, on it such that this Court, exercising its equitable powers, will intervene and extinguish Home Interior's lien against Aziz Inc.'s assets which, for purposes of this case, is comprised of the Gregorian Receivable. For the following reasons, I find that Abbas has made the requisite showing.

It is clear that Home Interiors was created for the sole purpose of benefiting Michael and Aziz, Inc. at the expense of Abbas, a judgment creditor.  More specifically, rather than simply paying off the note to Valley National Bank, which Michael as a guarantor was legally obligated to do, Michael, using his son, formed Home Interiors.  Home Interiors then purchased the Aziz, Inc. note from Valley National Bank and obtained an assignment of bank's lien on Aziz Inc.'s assets, including the Gregorian Receivable. Had Michael (or Home Interiors) simply paid off the note, the lien would have been extinguished and Abbas would have a priority interest therein.

---

[2] Of the just over $366,000 used to purchase the debt from Valley National Bank, $270,000 was contributed to Home Interiors from Michael.  Michael purportedly "loaned" the money to Joshua, who then purportedly "loaned" the money to Home Interiors. In any event, the money ultimately came from Michael and is owed to him. Technically, an additional $94,000 was contributed to Home Interiors by Michaels' sons, however, that $94,000 is directly linked to a "gift" that in that amount from Michael to his sons.

Instead, Michael and Aziz, Inc.'s indebtedness to Valley National Bank is not only extinguished, through Home Interiors they have a priority security interest in the Gregorian Receivable. Once Home Interiors executes on the Gregorian Receivable, that money will be passed through to Michael/Aziz, Inc. In other words, Home Interiors was created as a sham corporation for the sole purpose of cutting off Abbas's right to Aziz Inc.'s assets, including the Gregorian Receivable, in favor of Michael and Aziz, Inc. Under these circumstances, the Court is hard-pressed to conclude that the parties would be in the same position absent the manipulations engaged in by Michael, Aziz, Inc. and Joshua.[3] Therefore, I am denying Home Interior's motion for summary judgment and granting Abbas's motion for summary judgment.

## Conclusion

It is hereby Ordered that:

1. Abbas Corporation (PVT) Limited's Motion For Summary Judgment (Docket No. 38) Is *allowed*: and

2. Intervenor-Defendant Home Interiors' Memorandum Of Law In Opposition To Plaintiff's Motion For Summary Judgment And In Support Of Its Cross-Motion For Summary Judgment (Docket No. 43) is **denied**.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[3] Home Interior's suggestion to the contrary is, as it well knows, meritless. In the first instance, Valley National Bank would likely have exercised its right to execute against Michael under his guaranty. On the record before me, it is at least arguable that Valley National Bank could have obtained full or close to full payment from Michael. Aziz, Inc.'s assets would then remain available to Abbas to satisfy its judgment. At the same time, Michael and Aziz, Inc. would be in a significantly worse financial position—obviously, this is the scenario they were trying to avoid by engaging in the above described scheme.